UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

John Redman,

                         Plaintiff,

v.

R. Aranas, et al.,

                         Defendants.

3:17-cv-00551-RCJ-CBC

**ORDER**

    Before this Court is the Plaintiff's (Mr. John Redman) Motion for Leave to Amend (ECF No. 20), where Mr. Redman asks this Court for leave to file a Third Amended Complaint (TAC) and Motion for a Status Check (ECF No. 25). The Court will first address the merits of the Motion for Status Check. The Court does not provide status checks for its cases and advises Mr. Redman to not file such motions. Motions such as these put stress on an already overburdened judicial system. The Court receives numerous motions every day and will not provide status checks for its ongoing cases. The Court will address all Parties' contentions in due course. Thus, the Court denies Mr. Redman's Motion for Status Check.

    Next, the Court grants Mr. Redman leave to amend under Federal Rule of Civil Procedure 15, however, the Court must screen every amended complaint filed by Mr. Redman in this case. In so doing, the Court finds that Mr. Redman has not cured any of the defects that the Court has articulated multiple times. Rather, the Court finds that the only claim previously allowed to proceed in the Second Amended Complaint (SAC) is now also defective. Thus, the Court dismisses the case without prejudice. The Court grants leave to amend to Mr. Redman to file one final

amended complaint; after allowing Mr. Redman three amendments, if the Court finds that this final complaint does not cure the deficiencies stated in this order, then the Court will dismiss the case with prejudice for failure to state a claim finding that the amendment would be futile. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (citing Fed. R. Civ. P. 15(a)).

## Background

The case arises out of events that occurred at Lovelock Correctional Center (LCC) and Northern Nevada Correctional Center (NNCC). (3d Am. Compl. 4, ECF No. 20-1.) Mr. Redman alleges that he needed dental care and that the prison staff were deliberately indifferent to his needs. (*Id.*) He further contends that the policies of NNCC promulgated by the prison administrators motivated the doctors' actions, thus, they are also liable. (*Id.* at 5.) The Plaintiff has filed numerous complaints, and the Court has only allowed one claim raised in the SAC to proceed—a claim that Dr. Yup was deliberately indifferent in delaying pain medication to Mr. Redman after surgery.

In the TAC, Mr. Redman alleges the following: while initially incarcerated at LCC, a dentist completed a root canal with a temporary filling. (3d Am. Compl. 4, ECF No. 20-1.) Shortly thereafter, Mr. Redman was transferred to NNCC, where Mr. Redman was not seen by Defendant Dr. Yup for six months. (*Id.*) This delay caused the temporary filling to be in Mr. Redman's mouth for almost one year. (*Id.*) Dr. Yup allegedly told Mr. Redman that he would not waste time on an inmate. (*Id.*)

Mr. Redman further alleges that, because of the delay in replacing the temporary filling, he incurred an infection in Tooth Number 15. (3d Am. Compl. 4, ECF No. 20-1.) Due to the infection, Dr. Yup extracted that tooth. (*Id.*) Without further support, Mr. Redman concludes that Dr. Yup prolonged the delay to spite and inflict pain on him. (*Id.*)

Mr. Redman goes on to assert that he experienced "extreme" pain one month later, due to damage done to Tooth Number 14. (3d Am. Compl. 4–4A, ECF No. 20-1.) Mr. Redman says that the damage was caused by the extraction of Tooth Number 15, and that Dr. Yup admits that he caused the damage. (*Id.* at 4A.) Due to the damage of Tooth Number 14, Dr. Yup removed it. (*Id.*) In so doing, Mr. Redman contends that Dr. Yup drilled a hole in Tooth Number 13 and "ripped

open Plaintiff's sinus cavity." (*Id.*) A nurse that was present for the operation, told Dr. Yup that he was damaging Mr. Redman's mouth. (*Id.*) Dr. Yup proceeded to blame Mr. Redman for the damage to his mouth and sent him to his cell. (*Id.*) Dr. Yup neither provided pain relieving medication to Mr. Redman nor informed other personnel of Mr. Redman's condition. (*Id.*)

A few days later, Mr. Redman returned to the medical facility and saw another dentist. (3d Am. Compl. 4A, ECF No. 20-1.) The new dentist "immediately" prescribed Oxycontin to Mr. Redman for the pain and also prescribed antibiotics for the infection. (*Id.*) Because of Dr. Yup's conduct, Mr. Redman maintains, he has had to undergo further surgeries and there is permanent damage to his mouth. (*Id.* at 4A–4B.)

In the TAC, Mr. Redman also alleges that Defendants, Mr. Romeo Aranas, Mr. Isidro Baca, Mr. James Dzurenda, and Mr. Brian Sandoval, (Supervisory Defendants) allowed Dr. Yup to purposefully inflict harm on inmates, and they should therefore be liable under the Eighth Amendment to deliberate indifference for dental needs. (3d Am. Compl. 5, ECF No. 20-1.) However, Mr. Redman states no facts that evince that these Defendants knew or encouraged Dr. Yup to purposefully harm inmates. (*Id.*)

There are several glaring inconsistencies between the TAC and SAC. Mr. Redman stated, in the SAC, that the root canal was not completed until six months after his arrival at NNCC by Dr. Yup, but now Mr. Redman states the root canal was completed at LCC before the transfer. (2d Am. Compl. 4, ECF No. 19.) In the SAC, Mr. Redman said that Mr. Yup "chuckled" after he drilled into Tooth Number 13 and "ripped into" the sinus cavity, however, Mr. Redman does not allege that Dr. Yup laughed in the TAC. (*Id.* at 5.) Lastly, Mr. Redman now states that he received medication in a few days immediately upon informing another dentist in the medical facility as opposed to "remain[ing] in excruciating pain" for two weeks as stated in the SAC. (*Id.*)

**Leave to Amend**

Under the Federal Rules of Civil Procedure, when a party asks, "[t]he court should freely give leave [to amend the party's pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316

F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks omitted). Applying this lax standard, the Court allows the Plaintiff to amend his complaint at this time, especially as Dr. Yup does not oppose the amendment. However, in so doing the Court must screen the new complaint under 28 U.S.C. § 1915A.

**Screening Standard**

Federal courts must conduct a preliminary screening in every case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The statute mandates that federal courts screen every such complaint and its amendments "before docketing, if feasible or, in any event, as soon as practicable after docketing."[1] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)–(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave

---

1 This statute requires that federal courts screen every complaint filed by a prisoner against a governmental entity and/or its actors. The language concerning the timing, quoted above, only directs the courts when mandatory screening should occur—not what the courts must screen. Therefore, even though the Defendants have been served, the Court must screen the TAC.

4

to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

Additionally, a reviewing court should "begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* (i.e., on the Court's own initiative) if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly

does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**Screening of Third Amended Complaint**

In Count I, Mr. Redman levies allegations that Dr. Yup violated his Eighth Amendment rights in the course of Dr. Yup's treatment of Mr. Redman. The Court will go through all of the allegations and address whether Dr. Yup's alleged conduct creates any liability under the Eighth Amendment. There are three potential instances that could arguably be violations of the Eighth Amendment: (1) the delay in removing the temporary filling, (2) the harm caused by the extraction of Tooth Number 14, and (3) the delay in providing pain medication to Mr. Redman after the extraction of Tooth Number 14. However, a thorough analysis demonstrates that Mr. Redman has failed to state a colorable claim.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which

prison physicians provide medical care." *Id.* (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Turning first to the delay in replacing the temporary filling, the Court does not find that Mr. Redman states a colorable claim. Mr. Redman does not sufficiently allege facts that satisfy the first prong of the test—that the replacing of the temporary filling is a serious medical need. He has not alleged facts that indicate that a six-month delay can lead to "further significant injury." *Jett*, 439 F.3d at 1096. Additionally, even assuming that replacement was a serious medical need, Mr. Redman has not shown facts that allege that Dr. Yup acted (or failed to respond) with the purpose of causing Mr. Redman further injury. There are no allegations that indicate when Dr. Yup even became aware of Mr. Redman's need for a replacement.

Next, Mr. Redman fails to allege a colorable claim of deliberate indifference with regard to the allegations that Dr. Yup caused further issues in his extraction of Tooth Number 14. The Plaintiff has not alleged facts that show that Dr. Yup purposefully acted to cause damage to Mr. Redman's mouth and sinus cavity. At best, Mr. Redman's allegations amount to negligence or gross negligence—not deliberate indifference. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

Lastly, Mr. Redman fails to allege a colorable claim for deliberate indifference regarding the allegations that Dr. Yup failed to provide pain medication for a "few days." While the Court did allow a similar claim to proceed from the SAC, the TAC supersedes (i.e., replaces) all previous complaints, and the allegations in the TAC do not amount to a colorable claim. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original.").

///

Mr. Redman states that he was in excruciating pain for a few days after the extraction of Tooth Number 14, however, he does not state facts that would give rise to the conclusion that Dr. Yup was deliberately indifferent. Mr. Redman does not allege that he asked for pain medication and was unable to receive any medication; to the contrary, the complaint states that he went back to the medical facility a few days later and got Oxycontin "immediately." Thus, none of the potential claims that the Court identifies in Count I amount to colorable claims of deliberate indifference to Mr. Redman's serious medical needs.

In Count II, Mr. Redman raises claims of supervisory liability against the Supervisory Defendants. However, as before, the Court finds that Mr. Redman has not stated facts that would give rise to supervisory liability on the part of any of these Defendants.

"A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation . . . . Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

None of the allegations that Mr. Redman asserts show that these Defendants were personally involved with Dr. Yup's conduct. Nor do the allegations give rise to a claim that the Supervisory Defendants implemented a policy that repudiates constitutional rights and that this policy caused Dr. Yup's conduct. Thus, Count II also fails to give rise to any colorable claim; in sum, the TAC does not allege any colorable claim at all. Mr. Redman will have thirty days from the entry of this order to file a Fourth Amended Complaint.

On a final note, the Court is deeply troubled that the SAC and the TAC contradict each other on the face of the complaints as stated above. Additionally, each complaint contains a page, bearing Mr. Redman's signature, that say that the Plaintiff swears the statements alleged in the complaint are true under penalty of perjury. The Court reminds Mr. Redman that any assertions in the complaints are indeed made under penalty of perjury, and Mr. Redman must be truthful. "The

legal system offers many ways to deal with problems; perjury is not among them." *Escamilla v. Jungwirth,* 426 F.3d 868, 870 (7th Cir. 2005). In dismissing Mr. Redman's claims without prejudice and allowing him to amend, the new complaint must not contradict the previous complaints. Rather, it should allege additional facts (if that is possible) to support the necessary legal conclusions required to survive screening.

## Conclusion

IT IS HEREBY ORDERED that Motion for Leave to Amend (ECF No. 20) is GRANTED.

IT IS FURTHER ORDERED that Motion for Status Check (ECF No. 25) is DENIED.

IT IS FURTHER ORDERED that the case should be dismissed without prejudice with leave to amend for failure to state a claim.

IT IS FURTHER ORDERED that the Plaintiff must file a Fourth Amended Complaint within thirty days from the entry of this Order or the case will be dismissed with prejudice.

IT IS SO ORDERED.

Dated this 12th day of June 2019.

_____
ROBERT C. JONES
United States District Judge